BELL v. THE FLORENCE S.

(Fourth Division.    Fairbanks.    March 8, 1915.)

No. 2060.

MARITIME LIENS $\Longleftrightarrow$9—ADMIRALTY—SHIPPING.

The libelant remained all winter on board the river steamer Florence S., at her berth in the ice in the upper Tanana river, as watchman. He filed a libel on the boat for his services. On exception, *held*, a caretaker of a river vessel in winter quarters, when the vessel is not in commission, has no lien for his wages.

L. R. Gillette, of Fairbanks, and G. E. Gardner, of Oroville, Cal., for libelant.

Leroy Tozier, of Fairbanks, for claimant.

BUNNELL, District Judge.   Kittie M. Hensley appeared as claimant and defendant in the above-entitled action in admiralty and filed exceptions to the libel of William Bell, libelant, as follows:

"First, that the matter contained in article 'first' of the libel herein is impertinent and surplusage, and indefinite and uncertain, and fails to disclose any hiring whereby libelant can recover anything in this action; second, that the matter contained in article 'seventh' of the libel herein is impertinent and surplusage, and gives the libelant no lien upon the property attached herein, and recovery of the amount, or any part thereof. alleged to be due in said article cannot he had in this action; third, that several causes of action have been improperly united in said action and libel; fourth, that the entire libel is impertinent, indefinite, and uncertain, and does not allege facts sufficient to constitute a cause of libel."

It is contended by counsel for claimant that the libel fails to allege more than one hiring during the entire period from August, 1907, to October 19, 1913; and, since it is alleged libelant was not employed during one season, the libel is insufficient in that no hiring is alleged subsequent to the hiring in 1907.   Page 4 of the libel contains a statement of libelant's claim for services, provisions, and money furnished.   This statement purports to have been signed by one E. J. Smith, master of the steamer Florence S. on the 28th day of December, 1913, and recites the amount due for the seasons of

$\Longleftrightarrow$See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1911, 1912, and 1913.  It is in keeping with the allegations of the second, third, and fourth paragraphs of the libel.  Claimant's first exception is therefore overruled.

The seventh paragraph of the libel is as follows:

"That between the 19th day of October, 1913, to and including the 20th day of April, 1914, the said steamer, being in winter quarters on the upper Tanana river in Alaska, at the special instance and request of the master of said steamer Florence S., libelant remained on board of said steamer as watchman, and during all of said time libelant faithfully performed his duties as such watchman, and kept said steamer, her tackle, apparel, etc., intact.  That a fair and reasonable wage for the performance of such services was and is the sum of $4 per day, to wit, $728."

Counsel for claimant contends that the services of libelant as watchman, as set forth in paragraph 7, do not entitle libelant to a lien on the vessel.

Counsel for libelant refers the court to the case of The Navis (D. C.) 196 Fed. 843.  District Judge Hale in the decision says:

"I have no question, but that the services of watchman are maritime services."

The court, however, in this decision refers to the case of The James T. Furber (D. C.) 157 Fed. 124.

In the case of The Navis, the claim for libelant's services for his wages were after the launching of the Navis, and while lying at her mole in Portland harbor.  Such services were distinctly the services of a mariner, and were properly allowed.

In the case of The James T. Furber, it is stated in the syllabus:

"Services rendered to a domestic vessel after she has been laid up at a wharf for the winter, in pumping her out, attending to her lines, etc., are not those of a mariner, and cannot be made the basis of a maritime lien."

The distinction is apparent.

In the case of Chamberlain Transportation Co. v. Ashland National Bank, 70 L. R. A. 386, 387, it is stated in the notes as follows:

"There is no lien for services of a watchman in the home port of the vessel when it is out of commission.  The subject-matter of such a contract is not maritime.  The expression 'maritime character or

nature' means an act which contributes to the navigation of the vessel presently or prospectively. The Sirius [D. C.] 65 Fed. 226; Jepson v. The American [D. C.] 56 Fed. 1021; The E. A. Barnard [C. C.] 2 Fed. 712, 14 Phila. 556; The John T. Moore, 3 Woods, 61, Fed. Cas. No. 7,430. * * * The caretaker of a ship not in commission has no lien for his wages. Brown v. The Flora, 6 Can. Exch. 133. The court said that it regarded the services as being those of a landsman or shore laborer engaged by the owner to perform the duties of a watchman. A caretaker has no lien on the vessel for his wages. Levering v. Bank of Columbia, 1 Cranch, C. C. 152, Fed. Cas. No. 8,286; [Id.] 1 Cranch, C. C. 207, Fed. Cas. No. 8,287."

In a very recent case reported in 209 Fed. 287, September 13, 1913, entitled The Sinaloa, it is stated in the syllabus:

"Act June 23, 1910, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1192), which gives a lien for repairs, supplies, or other necessaries furnished to a vessel on order of the owner or a person authorized by him, does not cover the services of a watchman employed by the owner for a vessel while lying in her home port."

This question was raised on an exception to the libel. The question for decision was whether the services of a watchman employed by the owner created a lien upon the vessel under the act of Congress of June 23, 1910, when such services were rendered in her home port. The court said in rendering decision:

"The purpose does not seem to have been to create a new class of liens, or liens for services which had theretofore been determined not to be maritime, but only to deal with certain matters that had always been recognized as cognizable in admiralty."

The exception there was sustained and the libel was dismissed.

The second exception of claimant, therefore, is sustained.

As to the third exception, it does not appear to the court on the pleadings that several causes of action have been improperly united. This is a proceeding in rem. If upon the trial of the issues it is determined that any of the items for which a lien is claimed, under the rules of admiralty, are not properly in rem, such items may be excluded.

The third exception is therefore overruled.

The fourth exception, by virtue of the rulings made in the first, second, and third exceptions, is also overruled.

The libelant is given five days within which to amend the seventh paragraph of his libel, and the claimant is allowed

five days within which to except to any amendment of said seventh paragraph after the filing of the same, or to answer such libel. In the event no amendment is filed, the claimant is given ten days within which to answer.