### JENKINS et al. v. RANCOCAS CONST. CO. et al.

#### No. 4876.

Circuit Court of Appeals, Third Circuit.
Aug. 25, 1932.

Howard M. Long, of Philadelphia, Pa., for appellants.

Willard Harris, of Philadelphia, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below Charles E. Smith and William Jenkins filed libels alleging they had maritime liens against five pile drivers formerly owned by the Armstrong & Latta Company, their employer, but now owned by the purchasers thereof at a sheriff's sale of that firm's property. A commissioner, who took the testimony, and the court found the claim-ants had no lien and discharged the libels. Thereupon they appealed.

The facts of the case and law applicable as stated by the trial court are quoted below, we adding thereto that Armstrong & Latta were a constructing firm and had a wharf on the water front with buildings thereon; the firm had no work on hand or in view; all their water craft were beached or locked up and the five pile drivers were brought to the wharf, where they remained for a year and a half; Smith and Jenkins had charge there and were carried on the firm's books as watchmen and shopmen, the former being in charge by day, the latter by night. In deciding the case Judge Avis held:

"The libelant William Jenkins had been employed by the Armstrong & Latta Company for a period of about forty years, and the libelant Charles E. Smith had been employed for a period of about six years and a half. Neither one of the libelants was a seaman, nor were they employed as such. Their duties related to watching the boats, making some repairs and preventing damages.

"It appears by the testimony that the libelants did not assert any lien against the boats until after some of them had been sold by the sheriff, and Mr. Latta, an officer of the owner advised both libelants that he would protect them as to their wages, and stated that they were old faithful employees.

"The conclusion of the court with relation to the attitude of mind of the libelants is that that had not anticipated they were entitled to any lien against these vessels until after it appeared that it was the only way by which they might recover the balance of wages due to them.

"I am also satisfied that the circumstances were such as to preclude the libelants from claiming a lien on these boats because of the nature of the services rendered. The libelants were merely watchmen, and, although they exercised a supervision over the boats and performed some services with relation thereto, which would fit them for use on the water if they were to be used, the evidence does not show that such a service brings the libelants into the jurisdiction of this court.

" 'The services of a watchman and shipkeeper, rendered while the vessel is in port, do not create a maritime lien.' (Syllabus) The Brig E. A. Barnard (C. C. E. D. Pa.) 2 F. 712. See, also, The J. S. Warden (D. C. S. D. N. Y.) 175 F. 314.

"In this district Judge Green, deciding the case of The American (D. C.) 56 F. 1021, said: 'This claim is a meritorious one, and should be paid. The services for which wages are claimed by the libelant were faithfully performed, and should be compensated for. But, unfortunately for the libelant, he has mistaken his remedy for the wrong done him. The libelant was employed simply as a ship-keeper or watchman of the dredge America, a domestic vessel, while she was lying in port. Such employment, and the consequent services rendered, are not maritime, and cannot be the basis of a maritime lien.'

"It is true that in some instances, notably The Hattie Thomas (D. C. Conn.) 59 F. 297 and The Maggie P. (D. C. E. D. Mo.) 32 F. 300, the court held that one who appeared to be a caretaker should be entitled to a lien against the vessel for services rendered, but in both of these cases the party claiming the lien was more than a mere watchman, and the decisions are based upon the principle that the libelant rendered services usually performed by mariners. I think this is the distinction and that it does not appear in the present case that the libelants rendered such services.

"I find as a fact (1) that the five pile drivers were maritime vessels subject to liens in the admiralty court; (2) that the pile drivers were not in active service, but were laid up at the wharf of the owner and had been for a period of a year and five months prior to the last charge for services made by the libelants; (3) that the libelants were not performing any maritime services, but were acting only as watchmen in conjunction with the watching of other property of their employer.

"Under these facts, and applying the well-recognized principle of law that a mere watchman has no lien upon a vessel in its home port, compels the court to enter a decree dismissing the libels."

Agreeing thereto as we do, and avoiding needless repetition, we restrict ourselves to affirming the case on the Judge's opinion.