## The Main.

### Dennett v. The Main.

*(Circuit Court of Appeals, Fifth Circuit. June 20, 1892.)*

#### No. 84.

**Maritime Liens—Services of Stevedore in Foreign Port.**
A stevedore rendering services in loading or unloading cargo in other than the home port has a maritime lien therefor. *The Ilex*, 2 Woods, 229, overruled.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

In Admiralty. Libel by Albert Dennett against the steamship Main to recover for services rendered as a stevedore. The libel was dismissed by the district court, and libelant appeals. Reversed.

*Peter Stifft* and *O. B. Sansum,* for appellant.

*Ernest T. Florance,* for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. The libelant exhibited his libel in the court below against the steamship Main, claiming a maritime lien on the said steamship by reason of his services under contract in discharging and loading cargo. Admiralty warrant having issued on said libel, and said steamship having been seized, the appellee came into court and filed a claim to said steamship, as follows:

"Now into court comes the Anglo-American Steamship Company, Limited, a corporation duly established under the laws of Great Britain, and domiciled in Liverpool, England, by F. G. Frye, resident manager of said corporation, and claims the steamship Main, herein libeled, and desires to release the same from seizure on giving bond according to law.

"[Signed]      F. G. FRYE, Resident Manager A. A. S. S. Co., Ltd."

Having obtained possession of the ship under the above claim, and by giving the requisite bond, appellee excepted to the libel on two grounds: (1) That the claims and demands herein set forth are so vague and indefinite that claimant cannot answer thereto intelligently; (2) that, from the nature of said claim and demand, this court is without jurisdiction to entertain the libel herein. And thereafter the cause was called in the district court, and disposed of, as appears by the following entry:

"This cause was called upon exception to the jurisdiction of the court, and was argued by the proctors for the respective parties, whereupon it is ordered, adjudged, and decreed that said exception be maintained, and the libel dismissed, at libelant's costs."

These recitals as to the claim, exceptions, and decree of the district court disposed of all contention in this court as to whether the steamship Main was a foreign or domestic ship, or that the case was disposed of in the court below upon any other question than the jurisdiction of the court.

The case presented, then, is whether the stevedore rendering services to a vessel in a port other than its home port has a maritime lien for such services. Since the decision of Mr. Justice BRADLEY in *The Ilex*, 2 Woods, 229, it has been the invariable rule in this circuit to deny the lien in favor of stevedores. In *The Ilex*, Mr. Justice BRADLEY said:

"This is a libel *in rem* against a foreign ship, bound on a foreign voyage, for services as stevedore, for loading timber on the ship. A stevedore has never been held to have a claim against the ship itself for his services. On the contrary, the claim has been uniformly rejected. Judge BETTS, in *Cox v. Murray*, 1 Abb. Adm. 342, 343, undertakes to explain why the loading of a ship with cargo preparatory to a voyage is not a maritime service, whilst the furnishing of repairs and supplies preparatory to such voyage is a maritime service. He seems to think that the maritime quality arises only when the matters performed or entered upon pertain to the fitment of the vessel for navigation, aid and relief supplied her in preparing for and conducting a voyage, or the freighting or employment of her as the instrument of a voyage, but that services only incidentally benefiting a voyage have not this quality. Judge LOWELL thinks this not a very satisfactory explanation, because a ship cannot be used to advantage without a cargo, any more than without repairs and supplies. As, however, the precedents are all one way, I do not feel at liberty, in this court, to disregard them; and the views expressed by Mr.

Justice GRIER in *McDermott* v. *The Owens*, 1 Wall. Jr. 371, are so clear and forcible that I am not certain that I should come to a different conclusion if the question were a new one. He says: 'The stevedores are usually employed by the owner, consignee, or master, on their personal credit. The service performed is in no sense maritime, being completed before the voyage is begun or after it is ended, and they are no more entitled to a lien on the vessel than the drayman and other laborers who perform services in loading and discharging vessels.' "

While the rule adopted by Justice BRADLEY has been followed in the fifth circuit, the admiralty judges and proctors have not been satisfied. See *Esteban de Antunano*, 31 Fed. Rep. 920; *The Christobal Colon*, 44 Fed. Rep. 803. Meanwhile, in other circuits the contrary rule prevails. *Roberts* v. *The Bark Windermere*, 2 Fed. Rep. 722; *The Circassian*, 1 Ben. 209; *The Kate Tremaine*, 5 Ben. 60; *The George T. Kemp*, 2 Low. 482; *The Canada*, 7 Fed. Rep. 119; *The Velox*, 21 Fed. Rep. 479; *The Gilbert Knapp*, 37 Fed. Rep. 209; *The Scotia*, 35 Fed. Rep. 916; *The Mattie May*, 45 Fed. Rep. 899; *The Hattie M. Bain*, 20 Fed. Rep. 389; *The Senator*, 21 Fed. Rep. 191. In *Insurance Co.* v. *Dunham*, 11 Wall. 1, it was held as to contracts, that—

"The true criterion whether they are within the admiralty and maritime jurisdiction is their nature and subject-matter, as whether they are maritime contracts, having reference to maritime service, maritime transactions, or maritime casualties, without regard to the place where they were made."

Under this decision, it would seem that the question presented as to the right of the stevedore to a lien would depend upon whether the contract for his services was or was not a maritime contract. The various judges who have recognized the lien in favor of stevedores have stoutly maintained the maritime nature of the services. In *The Canada*, *supra*, Judge DEADY says:

"To my mind it is very plain that the services of the stevedore are maritime in their nature. A voyage cannot be begun or ended without the stowing or discharge of cargo. To receive and deliver the cargo are as much a part of the undertaking of the ship as its transportation from one port to another. Indeed, it is an essential part of such transportation. Freight is not due or earned until the cargo is at least placed on the wharf, at the end of the ship's tackle. To say that the final delivery or discharge of the cargo is not a maritime service, because it is or may be performed partly on shore, is simply begging the question, as it is the nature of the service, and not the place where rendered, that determines its character in this respect."

In *The Hattie M. Bain*, *supra*, Judge BROWN concludes his opinion as follows:

"Entertaining no doubt that stevedores' services are maritime, within the definition of the supreme court, the lien to which they who render such services are justly entitled, by the general principles of maritime law, should no longer be denied them, when the services are rendered, as in this case, to a foreign vessel."

And in *The Velox*, *supra*, the same judge said:

"The stevedore's services are as essential to the earning of freight as is the seaman's precarious service; and the former has an equal equity, therefore, with the latter."

In *The Senator, supra,* Judge Welker said, in relation to steve lores' liens:

"There does not seem to be any difference in principle between that service and the service performed by the sailor, the lighterman, the man who sets the rigging, scrapes the bottom, or paints the sides of the vessel, or by him who furnishes supplies or tows the vessel out or into the port. These are all necessary to the general business of the transportation of the cargo, and contribute to the reward of capital employed in the maritime service, and alike should be regarded as maritime service, and furnish a remedy against the vessel."

In *The Gilbert Knapp, supra,* Judge JENKINS says:

"The service is essential to enable the ship to earn freight, the sole object for which the ship is constructed and navigated. The contract of affreightment is confessedly maritime. Why are not services performed in fulfillment of the maritime contract equally maritime? The lading of the vessel or delivery of cargo upon the wharf is as essential an element of the contract as carriage by sea. Freight cannot be earned without delivery."

In *The Onore,* 6 Ben. 564, Judge BENEDICT said:

"Many maritime contracts are performed on land, and by persons having no immediate connection with the sea. The services in question are maritime, because they are a necessary part of the maritime service which the ship rendered to the cargo, and without which the object of the voyage could not be accomplished."

In *The Ilex,* Mr. Justice BRADLEY followed the decision and reasoning of Mr. Justice GRIER in *McDermott* v. *The Owens, supra.* Since the supreme court decided *Insurance Co.* v. *Dunham,* this reasoning is not at all satisfactory. In determining the maritime character of a contract it is not material to inquire where it was made. As long as the subject of the contract is maritime, the contract is maritime. Nor does it appear to be true, in fact, that the services of a stevedore are not for a service to be performed in the business of navigation. In *Leathers* v. *Blessing,* 105 U. S. 626, it was held that although the transit of the vessel was completed, and she was securely moored to the wharf, and had communication to shore by a gangplank, she was still engaged in the business of navigation, as her cargo was to be discharged at the place where she was moored.

The services of a stevedore in loading and stowing cargo on board of a ship, and in unloading a cargo from a ship, are largely employed on board the vessel itself, and generally he uses the ship's tackle and machinery in performing the work. It is difficult to see why hoisting and lowering cargo on a vessel is not as much a maritime service as hoisting and lowering yards and sails. A vessel, in taking on and unloading cargo, is earning freight; for, in loading and unloading, services are rendered, the expense of which necessarily enters into the affreightment contract. It may be true that stevedores, when employed by the owner or consignee, are employed on personal credit; but it is not true that, when stevedores are employed by a master in a foreign port, they are employed on the personal credit of the master. It must be conceded that when the

ship has finished its transit, and arrived at its port of destination, the cargo must be unloaded. It must also be conceded that cargo delivered on the wharf, and received by the master for outward voyage, is at the risk of the ship, and must be loaded. These are services that the master is compelled to have performed. If he hires a stevedore to perform the services, and then borrows money for the use of the ship, and pays him, it is conceded that the furnisher of the money has a lien on the vessel. Stowage of cargo is primarily a duty of the master, but is now generally performed by a stevedore, and it is a very important service to the ship; for on it depends the safe carrying of the cargo, and frequently the safety of the ship. Furnishers of supplies, like coal, to a steamship in other than a home port, preparing for a voyage, are conceded to have a maritime lien; but coal supplied and deposited on the wharf would be of no avail to the ship unless taken on board.

The argument that, if the stevedore's contract for loading and unloading cargo be adjudged to be a maritime contract, draymen and warehousemen, and others who perform services in delivering cargo, must also be held as rendering maritime services, is not sound. The test to be applied in determining whether a contract is maritime or not is to consider the subject-matter of the contract, and not the object. See 21 Amer. Law Reg. (N. S.) p. 1; *Leland* v. *The Medora,* 2 Woodb. & M. 109; *The Paola R.*, 32 Fed. Rep. 174. We conclude that on principle and the weight of authority the services rendered by a stevedore to a ship in taking in and stowing and in discharging cargo are services of a maritime nature. It follows that, when such services are rendered to a ship in other than the home port, a maritime lien results. *Insurance Co.* v. *Baring,* 20 Wall. 159. The decree appealed from is reversed, and this cause is remanded to the district court for the eastern district of Louisiana, with instructions to overrule the exceptions filed to the libel, and otherwise proceed in the case according to law.