## THE HUMBOLDT.

### GRAUMAN v. THE HUMBOLDT et al.

(District Court, D. Washington, N. D. March 15, 1898.)

1. MARITIME CONTRACT—SUIT IN REM.

A contract constituting a person general passenger and freight agent of a steamship, and giving him entire control of her passenger and freight business, is not a maritime contract, and a suit in rem in admiralty will not lie for a breach of such contract.

2. ADMIRALTY—JURISDICTION—LIEN.

A contract for services such as are usually performed by ships' brokers and business agents, and performed on land, is not a maritime contract, and cannot be made the basis of a maritime lien, which may be enforced in a court of admiralty.

Metcalfe & Jurey, for libelant.

Gorham & Gorham and Fred Rice Rowell, for claimant.

HANFORD, District Judge. This is a suit in rem by D. J. Grauman against the steamship Humboldt, to recover damages for breach of a contract alleged to have been made by and between the libelant and the charterer of the steamship, with the knowledge and consent of her owner, by which the libelant was constituted the general passenger and freight agent of the vessel at Seattle during the term for which she was under charter. Under the contract, the libelant was to have entire control of the passenger and freight business of said steamship, and was to receive as his compensation 10 per cent. of her earnings during said period, and for said compensation the steamship and her earnings were to be liable to him. The libel also alleges that the libelant removed from his former place of residence to Seattle, and, relying upon the credit of the ship, entered upon the performance of his duties, and that he declined to accept other offers of lucrative employment; that his commission on the amount of earnings of the steamship, if the contract had not been broken, would have amounted to $10,000; and the said contract has been wrongfully canceled, thereby causing damage to the libelant in the amount of $10,000. The case has been heard upon a plea to the jurisdiction in the form of exceptive allegations denying that the contract sued on is a maritime contract, and denying the right of the libelant to maintain a suit in rem founded upon said contract.

352 86 FEDERAL REPORTER.

The designation of the libelant in the contract as "General Passenger and Freight Agent" must be understood as indicating the nature of the services for which he was engaged, and the inferences to be drawn therefrom, and from the failure of the libel to show anything different, are that the services were not of a maritime nature, but were to be performed on land, and were similar to the ordinary work of solicitors, ships' brokers, and business agents, who have no part in the navigation of vessels. Such a contract is not maritime, and cannot be made the basis of a maritime lien. A lien does not attach to a vessel as security for the performance of a contract of affreightment, or for the transportation of passengers, until the freight or passengers have been taken on board, or placed in the care of the ship's master or a duly-authorized agent of the owners. The Freeman v. Buckingham, 18 How. 182; Vandewater v. Mills, 19 How. 82; The Lady Franklin, 8 Wall. 325; The Keokuk, 9 Wall. 517; The Delaware, 14 Wall. 579; The General Sheridan, Fed. Cas. No. 5,319; The Ira Chaffee, 2 Fed. 401; The Monte A., 12 Fed. 331; The Eugene, 83 Fed. 222. An agreement to solicit business for a ship, and to act as agent in making maritime contracts, is at least one degree more remote from the business of a ship, as such, than an executory contract of affreightment or passenger contract, and the ground for claiming a lien is correspondingly less. The authorities cited which seem to resemble most nearly the case under consideration are The Thames, 10 Fed. 848; The J. C. Williams, 15 Fed. 558; The Crystal Stream, 25 Fed. 575; The Paola R., 32 Fed. 174; Doolittle v. Knobeloch, 39 Fed. 40. These cases all deny the right to claim a lien for commissions of a ship's agent or broker. The cases cited by counsel for the libelant, in which liens were sustained, were all based upon services which were considered to be necessary to enable a ship to discharge the obligations of a maritime contract, as in the cases of The Canada, 7 Fed. 124, and The Wivanhoe, 26 Fed. 927, in which liens were claimed for delivering cargo on board the vessels; or cases in which, on account of the known insolvency of the owners, freight was hypothecated to obtain necessary credit for disbursing a ship in a foreign port. so as to avoid detention, as in the following cases: Freights of The Kate, 63 Fed. 707; The Advance, 19 C. C. A. 194, 72 Fed. 793; The Allianca, Id.; The Vigilancia, Id. The alleged agreement that the ship and her earnings shall be liable for the libelant's compensation under the contract, even if made with all the formalities necessary to constitute a valid hypothecation of a vessel, would not change the nature of the contract, nor confer jurisdiction upon a court of admiralty to enforce it. A lien so created would not be essentially different from a mortgage, and it is settled law in this country that a suit in rem in admiralty cannot be maintained to foreclose a mortgage upon a vessel. A decree will be entered sustaining the plea and dismissing the suit.